Council, while you're getting set up, let me just say that I think the way we'll proceed is we'll let both defendants counsel argue first, and then the government can respond to both. And then if you want to save some rebuttal time in your first, keep an eye on the clock. You each have 15 minutes. Good morning, Mr. Smith. Okay, I'm sorry, 10. I'm sorry. No, no, I may give you a little more. We'll see how we go. We're not pressed for time this morning. Thank you, Your Honor. My name is Gerald Smith. I represent defendant appellant Dale Gibbons. Your Honor, even though we have received the court's instructions that we have 10 minutes apiece, it is my intention to focus primarily on some trial issues. Ms. Bollinger will focus more on sentencing issues. That won't be completely segregated that way, but that is our intent. And I would like to save two minutes for rebuttal. There are obviously a large number of issues raised in this case. I want to focus primarily on three issues, which I believe, taken together or even individually, precluded Mr. Gibbons and Ms. Gibbons from the benefit of a fair trial and cast serious doubt on the jury verdict. The first of the issues, and perhaps most important because it's kind of an umbrella for everything else that occurred in the trial, is the district court's admission of evidence that two co-defendants had pled guilty in this case. There was extensive briefing and argument. The court ultimately allowed the admission of the guilty pleas without really doing the balancing that is required. The court quoted cases, Ninth Circuit cases, that said that, that approved the after balancing was done. The court, rather than following other opinions of this court, simply accepted that in those cases, the pleas were admissible and therefore they're admissible in this case. It ignored what this court and other courts have said about the need to do a case by case balancing in any 403 situation, and particularly when you have something as crucial as this. It is entirely impossible, even with the limiting instructions that were given, and I have some doubt about any limiting instruction that may be the result of being a defense attorney. Normally they're given when something comes in that we don't like. But what we have here is the jury was told that two co-defendants had pled guilty to the same charge that Mr. Gibbons and Ms. Gibson were on trial for. The court noted that this is admissible according to several cases, some Ninth Circuit cases, but what the court didn't look at was that balancing has to be done case by case. In fact, and I quoted in my brief, both some commentary from Lewisell and Mueller, and also a Ninth Circuit case that talks about the need for specific balancing to determine the probative value as opposed to the prejudicial effect. In page 37 of the brief, the cases and the commentary say that in these cases, those cases involving 403 evidence, it is more difficult for appellate courts to formulate rules of decision to govern future cases. Taking a case that says it was not error for the district court to admit evidence of the guilty plea, and therefore it's admissible in this case. Well, Mr. Smith, are you suggesting that it is impermissible for the jury to hear that a co-defendant who is now testifying against his other co-defendants is testifying pursuant to some sort of an agreement that he's reached with the government so that the jury isn't told that he may have a significant motive to shade his testimony in order to better his own position in sentencing? And I did raise that issue in the brief, Your Honor, because normally the issue of a co-defendant's plea comes up when it's the defense that brings up the fact of a plea. Right, but I'm assuming these witnesses testified, did they not? The witnesses did testify. So the question is, is the jury entitled to know that they have a significant motive as a result of the deal that they have cut, which might impact the truthfulness of what they're saying? And I guess the question then becomes, how do we do it in a way that doesn't hurt the remaining co-defendants because of the inference that if these witnesses pled guilty, then the defendants on trial must be guilty as well? Well, Your Honor, if the issue of the guilty pleas coming in had been because there was a desire to show that they were testifying in the way they were because of a benefit they were receiving, we could have a different position. And again, that would be something that defense counsel would be bringing up. Well, I guess I'm asking a more fundamental question, and that is, in order to ensure that the jury has all relevant information to assess the credibility of this particular witness, isn't it important for the jury to know that the witness has a significant motive for being present in the courtroom today and saying what he or she is saying? I don't think there's a yes or no answer to that question, which is precisely my point. Isn't the answer, yes, it is highly relevant, but the case law suggests under 403 that we have to also be sensitive to the prejudice to the defendants, the co-defendants on trial because of the manner in which the jury may use that information to the detriment of the defendants on trial? To the question framed in that way, I think my answer would be yes. Okay. And how do we, then my next question is, how do we do it without telling the jury that they're testifying co-defendants who have previously pled guilty but have not yet been sentenced because the judge wants to see how they perform under the agreement in fashioning the appropriate sentence later on down the road? When I say the answer is yes to the question is I understood it. There is all kinds of relevant evidence that is probably per se admissible. There's all kinds of relevant evidence that is per se inadmissible. Relevance, probative value is only part of the issue. I understand it's two-pronged. Is it probative and relevant? And the second prong is, is it unduly prejudicial? And I think that what the error of the district court was and the way I understand the framing of your question is that what may very well be an ongoing difficult question cannot be answered once and for all. It has to be done on a case-by-case basis. The district court In this case, is it your position that the jury should never have been told that the witnesses were testifying pursuant to an agreement following their own plea of guilty? In this particular instance, yes. Because the case law that says that it's approved, the admission of evidence of guilty pleas has talked about the need to show the testifying witnesses, testifying co-defendants' connection to the case, the familiarity with the facts. There was a huge amount of evidence that showed that. In fact, the district court judge, when the issue first came up, made note of that, said, you know, we don't need this to show that In fact, his final statement on the issue was, I might have decided these cases differently if it were up to me. But the Ninth Circuit has spoken. It's admissible. It's not admissible, per se. And in this particular instance, when we were not, once the court had allowed that evidence to come in, we were not allowed to do the follow-up. We weren't allowed to cross-examine on exactly what they had pled to. Nowhere in their plea agreements or in their plea colloquies did the court or the plea agreements advise them of what the necessary elements of the offense were. Did not advise them about materiality. Why is that relevant? I mean, isn't the motive of the defense to show, in a way that hopefully doesn't damage your own client in the process, that this witness must be exaggerating or outright lying in order to get a better sentence from the judge after the trial is over? And again, Your Honor, in most cases, that is true. But what's different about this case from any other case, whether it be a drug case or another fraud case, where you've got a testifying co-defendant? What's different about this case, Your Honor, is that very little, if any, and frankly, I cannot remember any factual statements, testimony from any witness on conduct, somebody did this on this day, they did this on that day, that was disputed. The all of the so-called victims, the lenders on one end, the buyers on the other end, were in fact, if there was a conspiracy, co-conspirators. Everyone was working together. So we weren't in a situation where we wanted to say that Mr. Berger or Ms. Patrick were lying, exaggerating, or anything else. In fact, Mr. Berger testified that there were a lot of instances, specifically, and it's in the brief, where the lender's representatives were giving instructions, were telling them how to do these things, and even testified that there were many other instances, and he had told the government of other instances, that there were a lot of other instances, but the government didn't want to hear that. I was trial counsel. I was not able to call Mr. Berger in our case, and I believe it's in the record. If it's not, I apologize, because Mr. Berger's attorney would not allow him to talk to me, and I try not to commit the malpractice of calling a witness, but I don't know exactly what they're going to say. But in this particular instance, the probity value was negligible. The prejudice was enormous, because... But why wouldn't those witnesses have the same motive with regard to their testimony concerning the intent, as they would in testifying about any of the predicate transactions for the fraud? Well, if they had testified about intent, we, again, might be in a different situation. None of the witnesses said, we did this intending to deceive the lenders. We did this... But it's a fraud case. Nobody ever says, I'm doing this because I'm trying to defraud the victim. That's the whole problem for the jury to figure out. They would do it, Your Honor, or they should have done it, at their guilty pleas. They did not admit, neither of the defendants who testified admitted at their guilty pleas, it's not in the plea agreement, that they did it and it was material, or they did it with the intent to deceive. Yes, it's a fraud case. Any time that there is false information put on a piece of paper, I think the general public thinks it's fraud. Well, it depends on whether or not it's done in order to induce the victim to part permanently with the money. Yes. I understand that. That was the element that was missing in the testimony at trial from both of these defendants was that the reason that element was missing from their admissions at their guilty plea is because that element was not there. Both of them testified that they believed that the lenders knew exactly what was going on. Certainly, the buyers, when they signed a piece of paper that said they had this income, or they had this asset, knew it wasn't true. That is another issue that I did want to bring up. I've let you go for almost 14 minutes, so I'll give you a little time in rebuttal, but let me hear from Ms. Bollinger with regard to Ms. Gibson. Thank you, Your Honor. Thank you, Mr. Smith. Good morning. Good morning. Beth Mary Bollinger on behalf of Sally Gibson. There's no relation between the defendants. Their last names are slightly different. I understand. I do want to say a couple of things about what Mr. Smith was just speaking about. One is, I do think that if the judge had done the 403 analysis and given his comment, if I had been the Ninth Circuit, I may have made a different determination. I think that there could have been a different result had he done the 403 analysis. I think that's significant. Then the other point I would make, Your Honor, is that if, in fact, these guilty pleas are to go into evidence, then I think the 403, the only way to allow that 403 to be honored, that rule to be honored, is to allow the defense counsel to go and complete and absolute, go through every part of those guilty pleas. Even if the judge thinks that's not to the benefit of his client, in this case, what Mr. Smith wanted to go into was, you pled guilty to something where you never had the intent to deceive. That is the critical component. He's absolutely right. Once you're co-defendant on intent to deceive- But it almost amounts to a collateral attack on the validity of the plea of a non-party to this proceeding as a way of suggesting to the jury that your client could not have had the intent to defraud. That's interesting. Have you got a case that allows you to do that? I mean, this is a very interesting theory. I mean, frankly, I hadn't really thought of it before. It's interesting that you say a collateral attack because what I have here is what happened to these co-defendants was collateral estoppel. From the other perspective, in their trial, I think that they would have the right to- Well, let me ask you a different question, and that is what's your best case that allows you to collaterally attack? And then raise under a collateral estoppel theory that the witness basically made an invalid plea, did not actually plead guilty to fraud because the witness didn't fully admit to all of the elements and the requisite mens rea associated with them in pleading to the same charge? I think that this case law is fairly limited, and so I don't have a case to cite to you, but I have the practical experience of being in defense, when you're doing these kinds of trials, that you go right, left, up, down. You do every cross-examination on the co-defendant who's plead guilty, and you go through every single point. And in this case, the point to have gone through was that they never pleaded guilty to intent to defraud, to deceive, and they actually themselves- And that would have led to, well, the actual intent and the ultimate intent. And when I say collateral estoppel, Your Honor, I actually mean that we were collaterally estopped from making the statement that we did not have the intent to deceive. I mean, technically, it's not collateral estoppel because it's not the same party. I understand the analogy. Yeah, I just thought it was interesting that you used the same word. I'm like, oh, you're reading off different- Off your script? Yeah. Well, it's an interesting theory. I guess Mr. Smith's comment about the fact that all relevant evidence generally hurts the defendant. The question is, is it unfair to admit this evidence? And then if you do admit it, is it unfair to limit what the defense attorney does to confront that witness? I think it's a very, very telling, very important issue. Your Honor, since I'm in charge of sentencing, I'll keep moving. I did want to point out, and this is all in the brief, but I do think this is- I don't think I've ever used the reasonable or the hypothesis language, but I do think that there's a problem with witnesses, a section, a big segment of witnesses the government did not call. And when you look at the phrase that if you have two hypotheses and one is for guilt, but one is perfectly consistent with an innocent person, then the government has failed to fill in a hole. And we have a section of the person that Mr. Gibbons dealt with directly from the lender. None of those people were called as witnesses. We only got policies from the lenders. We did not get the actual individual. Doesn't that raise the whole question, though, of who has the authority to speak as the agent that binds the lending entity? These are all corporations that we're talking about here. And you're trying to urge upon us a rule that a low-level minion who happens to process the loan paperwork has the authority to speak on behalf of the corporation. Almost a Bank of New England kind of a theory, that if the bank teller knew at the time she took the cash in violation of a currency transaction report that the bank itself is bound with knowledge that a report was due. Well, I would have two comments. One, I think that the minion was the son-in-law of the owner of the company in one case. And I think that... But what is the title of the person? I mean, who cares what the relationship is? The question is, is he... But the second point, and here's the other point... Well, I mean, this is classic corporate or agency law. Who speaks on behalf of the entity? The victim is the corporation, right? No, what I would say, one of my answers to that, Your Honor, and this is that in this case, the only person that Mr. Gibbons and Mr. Berger were allowed to speak to were the person you just called a minion. They were not allowed to speak to anyone else. So, since the lender developed it so that this was their spokesman... But that person is the victim of the fraud. These are not the people who lost the money. The money was lost by the corporation, which loaned the money. And the question as a matter of law is whether or not there was an intent to defraud the corporation, not whether there was an intent to defraud the minion who processed the paper. And had the victim corporation permitted any individual to go up the chain if they had any questions, then perhaps there could be a burden on the individual, Mr. Gibbons, who didn't do that final step. But because the corporation chose to make this their one and only spokesperson, then I think that... Did the corporation designate this person as a 30B6 custodian of records who had authority to speak on behalf of the corporation? I believe it was part of the record, and it's in one of the briefs. Did you attempt to call anybody else from the banks? I'm a pellet counsel. Okay, well, the trial counsel... I'm a pellet counsel. Okay. So are you contending here that this is a failure of the government's proof, so that this is insufficiency of evidence? Yes. Were the lending files in evidence complete? I wouldn't be... I'm not familiar... I'm not sure. I think so. I think that they were complete. Somebody's made a computation of the amount of victim recompense. Somehow. Did they talk to every lender? Was there evidence of it? Were they compromised? Are you talking about the same issue at this point? There's a judgment against each defendant for money damages. Right. Yes, and that actually would be the... That was what I was to dedicate my time to. And I actually... I would just rest on my reach, because I think it's spelled out. I do have a point that is only for Ms. Gibson, and that is at her sentencing, Judge Whaley spoke of how he did not see that she had been involved in the conspiracy the whole way through. I think that's a really important issue. This is why I'm asking you. Were all of the lending files in evidence? Or do you know? I can't... I'm sorry. I don't... But I would say that the way that the calculations were made for both the sentencing guidelines and for the restitution were unreliable and should not have been the basis. And basically what had happened was the judge decided to take the... He said that the borrower lost the money of the difference between what they took out in terms of the loan and then what the bank thought that the value of the property was. But there was never any evaluations done on the property, any appraisals done on the property. But as a practical matter, how did the district court do that? How do you go back in time and determine what the fair market value of the property was five years ago? Well, I think that there was a request by the government to do an evaluation of the property for purposes of determining what the loss would have been to the lenders and what the loss would have been to the borrowers. Was there a title report? No. Was there a tax statement? Was there assessed valuation before the court? That was what the government asked to have permission to do and ultimately never brought those appraisals to court. Wouldn't those items have been in the original mortgage lending file anyway? Well, there was what the government stated was that because the appraisal was an inflated amount That's an appraisal, but the King County Spokane County assessor is not going to put in an assessed value that's anywhere near the 1% affidavit value. And did anybody get the 1% excise tax affidavit? Who signed that? I don't believe that was presented. And I know I'm out of time. Well, go ahead. I just think that initially they did have a jury trial because this was after the first family and the judge actually threw out the jury verdict and wouldn't rely on it because it was unreliable as to losses and then when he saw it as and then when he went back, now we were at Booker and he decided to, I mean the government had presented the evidence and he tried to come up with some loss and I think what he should have done is not covered for the government and stuck with what he said. Let's be fair to Judge Whaley. He was trying to respond to what the Supreme Court was telling us and Booker and Ameline and at that point in time, none of us could figure out what they were talking about. We're still struggling trying to figure it out. Well, and I do think he was trying to figure it out but I do think that the government didn't present the evidence that it should have. It was the kind of evidence that he'd already once thrown out as being unreliable and not being significant and something that could do that evaluation and so I think he would have been, he shouldn't have been trying to figure it out. I think he should have been not having value and then if he wanted to do an upward departure, he could have done an upward departure. Ms. Bollinger, are you talking of, we're mixing apples and oranges here. I thought that there was actually a sentencing jury that ruled on, that found based on a standard of proof beyond a reasonable doubt about the enhancements under the guidelines. And also found in terms of an amount and the judge threw that out and I quote the entire part of the page but in my brief I quote the entire part of where the judge said that valuation of loss is not reliable. Okay. Was it high or low? The specific amount. I think it may have been higher than what the judge used. So you benefited because later when he decided the issue of restitution himself, he used a lower number. I would say the government benefited because he used any number at all. Ms. Bollinger, it's a specific factor in the guidelines in terms of the amount of the loss and if it's a higher number you get more time. So by a lower number your client benefits. I agree with that. I'm so sorry. That's okay. But the one thing I would say is that that we don't know from these specific borrowers what their loss is. Would that have been the rental value of the home? Was there any effort to have it written on any of those things? If you don't have the mortgage records, you don't have it. Right. And nothing about the lender, whether they sold the house as a profit, we didn't have any of that information before the court and so I don't think the court could use any of that information, even though he wanted to. Okay. Thank you. Thank you, Ms. Bollinger. Let's hear now from the government. May it please the court, George Jacobs on behalf of the United States Attorney's Office for the Eastern District of Washington. I was trial counsel in this. You wrote the brief also, right? Yes, I did, Your Honor. In the Sally Gibson brief on page five, you start stating facts without a citation to the record, but you say, Sally Gibson then a licensed realtor in the state of Washington. First of all, realtor is a trade name for the National Association of Realtors. It's a registered mark and I want to know where in the record I find that she was a member of the National Organization. Do they issue licenses or does the state of Washington issue salesman's license to real estate salesmen? You've used terms I think that you don't understand or there's nothing in the record to support. Your Honor, I look at another volume. Sure, go right ahead. Your Honor, if the court would look at the Gibson SCR, it's 099 which I've got a copy of the Government's Exhibit List. Government's Exhibit 5-1 and 5-2 it's a partially redacted certified copy of State of Washington Department of Licensing Certification of Licensure regarding Sally Gibson and partially redacted certified copy of State of Washington Department of Licensing Affidavit. Your Honor, I don't believe the United States actually exhibited 5-1 and 5-2 in the supplemental excerpt of record, but if the court would look at SCR 99 It says she's a real estate salesman, right? Is she a broker? She is not a broker. She worked for REMAX, Your Honor. And she was an agent for REMAX. Okay, but that doesn't make her a realtor. Then that is incorrect, Your Honor. That's my apologies to the court, Your Honor. It just made me nervous about reading the brief because I understand the terms. I was in a little bit of real estate litigation. Yes, Your Honor. She was a real estate agent. Let me ask you the next question. Yes, Your Honor. Why is it that the complete mortgage files are not in evidence? Your Honor, there was difficulty There was difficulty. The evidence that the FBI got When you say the mortgage files, Your Honor, there's a lot in a mortgage file. Mortgage lender's files is what I'm talking about. Where one would expect to find at least a title report ensuring the mortgage interest against certain losses. Secondly, a statement of the real estate tax status, whether real estate taxes were paid or not. And if there was a true reflection of the taxes, one would look at the selling price and say this whole case is completely out of whack. And if the mortgage lenders were in fact just playing the game, I can understand why the United States wouldn't want any of that material in there. But I can't understand why it wasn't introduced in evidence. That's your case. That the mortgage people were defrauded. Your Honor, the real estate excise tax affidavits were introduced in evidence. The uniform residential loan application was introduced in evidence. The real estate purchase and sale agreements were introduced in evidence. The uniform residential appraisal report was introduced in evidence. There were the HUD-1 settlement statements were introduced in evidence. These were not HUD loans. Were they? They were not, but the settlement statement... Those forms were used. Those forms were used, yes, Your Honor. By closing agents. But they're not... It's not defrauding the government in terms of insured mortgages or insured transactions? Your Honor, the government's theory of prosecution was that as a result of the actions... Correct, Your Honor, and the financial institutions were defrauded. Right. By the use of wire or mail? Correct, Your Honor. Actually, by just use of wire. Mail fraud was not charged. All right, okay. Simple enough, and I assume that nobody really quarreled about that during the use of the telephone. By the use of the fax machines and... Yes, yes. But again, I'm saying that a complete real estate record sent to a lender for an analysis would just... I mean, just on the face of it, I would ask a million questions. Your Honor, well, there was a confession, Sally Gibson, and that's at SCR 90 through 94, where she admitted when she was interviewed by Kwajo Botang of the Department of Financial Institutions and the FBI investigating agent Bernie Brown, in that written statement that she provided, she admitted that all this dishonesty was perpetrated in order to acquire the financing. Mr. Gibbons was also interviewed by HUD investigator Mike Erdahl and was shown skiff letters, checks that had been altered, and other documents, and Mr. Gibbons, he took the stand at trial, and I questioned him about that, but he admitted doing those acts and that those acts were dishonest. Was there some testimony that the lenders didn't really want to know what the true facts were? Your Honor, there was testimony that two account representatives, Marco Castaneda and Deanna Kogan, from the WMC Weyerhaeuser Mortgage Corporation may have known or may have given instructions to that effect, but... Then the defendants didn't get an instruction on deliberations, did they? Your Honor, they didn't, but the court did instruct that if... that instruction was not necessary because, Your Honor, if you look at the indictment, the indictment didn't charge that who's loaning the money here? It's not the account representatives. It's an institution. And the indictment charged that the institutions were defrauded, not the account representatives. And moreover, the deliberate ignorance instruction was taken care of by Judge Whaley's... the instruction that he gave to the jury on materiality, which is at... ... ... Take one moment, Your Honor. ... ... ... ... ... ... ... ... The materiality instruction is in the supplemental excerpts of record, Your Honor, and... ... ... ... Judge Whaley did instruct that the defendants would not...
judges: Beezer,tallman, Bybee